**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**TRINA RENEE BARNES**                                                                        **PLAINTIFF**

**V.**                            **CASE NO. 4:15-CV-00788 KGB/JTK**

**CAROLYN W. COLVIN,**
**Acting Commissioner,**
**Social Security Administration**                                                            **DEFENDANT**

**RECOMMENDED DISPOSITION**

**I.   Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. You may file written objections to this Recommendation. If you file objections, they must be specific and must include the factual or legal basis for your objection.

Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, you may also waive any right to appeal questions of fact.

**II. Introduction**:

Plaintiff, Trina Renee Barnes, applied for disability benefits, alleging a disability onset date of September 22, 2011. (Tr. at 21). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 34). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Barnes has requested judicial review.

For the reasons states below, this Court should affirm the decision of the Commissioner.

**III. The Commissioner's Decision:**

The ALJ found that Barnes had not engaged in substantial gainful activity since the onset date of September 22, 2011. (Tr. at 23). The ALJ found at Step Two that Barnes had the following severe impairments: L5-S1 protrusion without impingement, and obesity. (Tr. at 24). At Step Three, the ALJ determined that Barnes's impairments did not meet or equal a listed impairment. (Tr. at 26). Before proceeding to Step Four, the ALJ determined that Barnes had the residual functional capacity ("RFC") to perform work except for the following limitations: 1) occasionally lift and carry 10 pounds and frequently lift and carry less than 10 pounds; 2) stand and/or walk 2 hours in an 8-hour workday; 3) sit for 6 hours in an 8-hour workday; 4) allowed sit/stand options with the option to alternate sitting and standing every 30 minutes; and 5) push and/or pull 10 pounds occasionally and less than 10 pounds frequently. (Tr. at 26-7). Next, the ALJ found that Barnes is capable of performing past relevant work as a customer service representative. The sequential evaluation, therefore, ended at Step Four and the ALJ found that Barnes was not disabled. (Tr. at 34).

**IV.  Discussion:**

A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The

Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

B.  Barnes's Arguments on Appeal

Barnes argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that the ALJ erred in: 1) finding Barnes could perform her past relevant work as a customer service representative; 2) failing to give proper weight to the opinion of Dr. Joseph Nelson; 3) not considering the side effects of Barnes's medications; 4) failing to give proper credit to claimant's work history; and 5) failing to find that Barnes's depression was a severe impairment. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Using Vocational Expert testimony, the ALJ determined that Barnes could return to past work as customer service representative.  Part of the RFC put forth by the ALJ included a sit/stand option.  Barnes argues that the sedentary work of a customer service representative, DOT 249.362.026, does not include a sit/stand option. While a sedentary job requires considerable sitting, "not all sedentary jobs are ruled out due to the addition of a sit/stand option." *McMillian v. Colvin*, 2013 U.S. Dist. LEXIS 182981, at *8-9 (N. D. Tex. Oct. 24, 2013). The DOT provides generic descriptions for each position.  When a claimant has a limitation that affects his ability to perform every job within a generic range, the Vocational Expert may reduce his estimate of the number of existing jobs the claimant can perform, based on the added limitation. *Wheeler v. Apfel*, 224 F.3d, 891, 897 (8th Cir. 2000).  It is appropriate for an ALJ to consult the Vocational Expert and such testimony constitutes substantial evidence when, as here, it is in response to a hypothetical that

captures all the concrete consequences of a claimant's impairments. *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011). Based on the medical evidence, the hypothetical posed by the ALJ in this case encompassed Barnes's full limitations.

On October 3, 2011, Barnes saw Dr. Joseph Nelson, M.D., her primary care provider. (Tr. at 264). She did not complain of back pain. *Id*. She returned on December 19, 2011, July 24, 2012, and August 8, 2012, and at none of those visits did she complain of back pain. (Tr. 264-277).

On October 6, 2011, Barnes visited Dr. Chris Skelley, M.D., complaining of low back pain and spasms related to a fall two weeks prior. (Tr. 291). Barnes denied radicular pain or numbness in her legs. *Id.* X-rays revealed no fractures, no subluxation, and mild osteoarthritic changes. (Tr. at 292). She was prescribed Flexeril, Naproxen, and Lortab. *Id.* Dr. Skelley noted on October 20, 2011 that Barnes was feeling much better after physical therapy, but could still not lift or bend. (Tr. at 296). She said she was not using much medication for pain. *Id*. Dr. Skelley observed normal muscle tone, muscle strength, and range of motion. (Tr. at 299).

In February, 2012 Dr. Skelley found normal gait and range of motion, pain with back flexion and extension, crepitus, and tenderness in the bilateral paravertebral region of her lumbar spine. (Tr. at 298). Barnes reported intermittent, moderate back pain. She said he pain improved with physical therapy but it returned when she stopped. *Id.*

On August 13, 2012, Barnes underwent an MRI of her lumbar spine which revealed L5-S1 protrusion without impingement. (T. at 322).

On October 12, 2012, Barnes saw Dr. M. Carl Covey, M.D., and he found a negative straight-leg raise, normal motor and sensory function, normal heel to toe walk, no S1 joint tenderness, no interspinous tenderness, and unchanged pain with flexion and extension. (Tr. at 345).

4

Dr. Covey recommended steroid injections. *Id.*

On March 1, 2013, Barnes saw Dr. Nelson again. He examined her and found normal range of motion, muscle strength and stability in all extremities, with no pain on inspection. (Tr. at 361). He found an antalgic gait on the left, normal paraspinous muscle tone, negative straight-leg raises, and seated straight-leg raise. *Id.* Barnes's lumbar range of motion was pain free and active, her balance, gait, and coordination were intact, and her fine motor skills were normal. *Id.* Dr. Nelson noted that Barnes had not had pain medication since October 2012. (Tr. at 362). He encouraged Barnes to start walking and exercise. (Tr. at 355).

On March 1, 2013, Dr. Nelson filled out a medical source statement. He stated that Barnes could lift and carry less than 10 pounds, stand and walk less than two hours in an 8-hour workday, sit less than four hours, would need to change positions frequently and have rest periods, take longer than normal breaks, and have the opportunity to sit or stand at will. (Tr. at 388). The medical source statement did not reference any clinical findings.

Barnes claims that the ALJ should have given Dr. Nelson's opinions more weight. However, Dr. Nelson did not specialize in neuroskeletal medicine or pain management, and his clinical observations did not reveal significant abnormality or pain. The opinions of Dr. Skelley and Dr. Covey likewise did not reveal significant limitations, and no doctor restricted Barnes from working. Additionally, Barnes did not complain of back pain to Dr. Nelson through the end of 2011 and most of 2012. Further, she discontinued physical therapy and treatment with pain medications.

A treating physician's opinion should be granted controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Miller v. Colvin*, 784 F.3d 472 (8th Cir. 2015). The opinion

of a treating physician, however, does not automatically control; nor does it eliminate the need to evaluate the record as a whole. *Id*. (*quoting Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001)). An ALJ may discount or disregard the opinion of a treating physician when other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of the opinions. *Id*. Dr. Nelson's medical source statement exaggerates the results of his clinical findings. However, the ALJ did incorporate some of Dr. Nelson's findings into the RFC, so he granted the opinion some weight. The ALJ did not err in his evaluation of Dr. Nelson's opinions.

The Court dispatches with Barnes's argument that the ALJ should have considered the side effects from Barnes's medications. The ALJ *did* note sleepiness and drowsiness as side effects in his opinion. (Tr. at 32). However, nowhere in the medical records is a report from Barnes that she had side effects from medications. *See Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004)(ALJ did not err in not considering side effect when claimant had never complained of such to her doctors). Moreover, for much of the relevant time period, she did not take medications for pain. The side effect argument fails to persuade.

The ALJ *did* discuss Barnes's work history, contrary to her assertion that he did not. He noted she worked for four different employers since her disability allegedly began, but that the work did not rise to the level of substantial gainful activity. (Tr. at 24). He noted that over the past 15 years, Barnes had worked as a customer service representative and a certified nurse's aide. (Tr. at 34). The ALJ did not need to discuss work history in detail, and Barnes's work record does not outweigh the limitations assigned by the ALJ, based on the record as a whole.

Finally, Barnes argues that her depression should have been ruled a severe impairment. The

claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to do work, then it does not satisfy the requirement of Step Two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). Barnes's only reference to depressive symptoms was that she was crying and wanted to remain in bed. She did not pursue psychiatric treatment or take regular psychiatric medications. She did not see a psychiatric professional. Moreover, her daily activities undermine her assertion of severe depression. She could perform all personal care, clean, do laundry, and prepare her own meals. She watches television, listens to music, and feeds the birds. (Tr. at 28; 169-170). *See Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir. 2001)(acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility). The Court finds no support for the contention that Barnes's depression was severe impairment.

**V. Conclusion:**

There is substantial evidence to support the Commissioner's decision that Barnes was not disabled. The ALJ correctly considered the Vocational Expert testimony and medical evidence as a whole. The finding that Barnes was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 2nd day of November, 2016.

_____
UNITED STATES MAGISTRATE JUDGE